# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUNG CHO, NAGLE WASHRITE LLC, DAVID DIAZ, and JAMEELAH EL-SHABAZZ, on behalf of themselves and all others similarly situated,<br><br>        *Plaintiffs*,<br><br>v.<br><br>CITY OF NEW YORK, BILL DE BLASIO, in his official capacity as Mayor of the City of New York, NEW YORK CITY POLICE DEPARTMENT, JAMES P. O'NEILL, in his official capacity as New York City Police Commissioner, NEW YORK CITY LAW DEPARTMENT, and ZACHARY W. CARTER, in his official capacity as Corporation Counsel of the City of New York,<br><br>        *Defendants*. | Civil Action No. 16-cv-7961 |

## PLAINTIFFS' RESPONSE TO
## DEFENDANTS' MOTION TO DISMISS

Ana-Claudia Roderick (ACR 9367)
Ian Goldrich (IG 5653)
KILPATRICK TOWNSEND &
STOCKTON LLP
1114 Avenue of the Americas
New York, NY 10036-7703
Tel: (212) 775-8700
Fax: (212) 775-8800
Email:
aroderick@kilpatricktownsend.com
igoldrich@kilpatricktownsend.com

Darpana M. Sheth (DS 1976)
Robert Everett Johnson*
Milad Emam*
INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900
Arlington, VA 22203
Tel: (703) 682-9320
Fax: (703) 682-9321
Email: dsheth@ij.org
        rjohnson@ij.org
        memam@ij.org

        * Admitted *Pro Hac Vice*

*Attorneys for Plaintiffs Sung Cho, Nagle Washrite LLC, David Diaz,
Jameelah El-Shabazz, and the Proposed Plaintiff Classes*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

STATEMENT OF FACTS ................................................................................................... 2

STANDARD OF REVIEW .................................................................................................. 7

ARGUMENT ........................................................................................................................ 7

    I.   Plaintiffs Have Stated A Claim For Relief On The Merits ........................................ 7

        A. Count I: The Closing Order Class ................................................................. 11

        B. Counts II-V: The Innocent Occupant Class ................................................. 12

            1. The Familial Association Subclass (Count V) ................................... 13

            2. The Warrantless Search Subclass (Count III) ................................... 14

            3. The Access To Courts Subclass (Count IV) ...................................... 16

        C. Counts VI-VIII: The Individual Claims ....................................................... 17

    II.  Plaintiffs Have Standing, And Plaintiffs' Claims Are Not Moot .......................... 18

        A. Plaintiffs Have Standing ............................................................................... 18

        B. Plaintiffs' Claims Are Not Moot .................................................................. 20

    III. David And Jameelah's Claims Are Not Time-Barred ......................................... 21

    IV. Jameelah Has Not Waived Her Claims, And In Any Event This Court
        Should Not Reach The Issue Of Waiver On A Motion To Dismiss ................................ 24

    V.  Defendants' Speculation About State-Law Remedies Is Not A Reason To
        Ignore A Violation Of The Constitution ...................................................................... 26

    VI. None Of The Defendants Should Be Dismissed .................................................. 26

CONCLUSION ................................................................................................................... 27

# TABLE OF AUTHORITIES

**Cases**                                                               **Page(s)**

*Abidekun v. Dep't of Hous. Pres. & Dev.,*
No. 96-7316, 1996 WL 679491 (2d Cir. 1996) ...............................................................23

*Anderson News, LLC v. Am. Media, Inc.,*
680 F.3d 162 (2d Cir. 2012)...............................................................................................7

*Barrett v. Forest Labs., Inc.,*
39 F. Supp. 3d 407 (S.D.N.Y. 2014)................................................................................17

*Barrows v. Jackson,*
346 U.S. 249 (1953)..........................................................................................................23

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)............................................................................................................7

*Bloomfield v. Bloomfield,*
764 N.E.2d 950 (N.Y. 2001).............................................................................................24

*Boddie v. Connecticut,*
401 U.S. 371 (1971)..........................................................................................................16

*Bounds v. Smith,*
430 U.S. 817 (1977)..........................................................................................................16

*Brady v. United States,*
397 U.S. 742 (1970)..........................................................................................................11

*Cain v. Darby Borough,*
7 F.3d 377 (3d Cir. 1993) .................................................................................................25

*Calcutti v. SBU, Inc.,*
273 F. Supp. 2d 488 (S.D.N.Y. 2003).........................................................................24, 25

*Camara v. Mun. Court,*
387 U.S. 523 (1967)..........................................................................................................14

*Casale v. Kelly,*
257 F.R.D. 396 (S.D.N.Y. 2009) ......................................................................................27

*Case v. City of New York,*
No. 14-cv-9148, 2017 WL 571530 (S.D.N.Y. Feb. 10, 2017) ..........................................27

*City of New York v. Castro,*
    160 A.D.2d 651 (N.Y. App. Div. 1990) ...................................................................3

*City of New York v. Partnership 91, L.P.,*
    277 A.D.2d 164 (N.Y. App. Div. 2000) ...................................................................3

*Clark v. Cty. of Placer,*
    923 F. Supp. 1278 (E.D. Cal. 1996)........................................................................16

*Corso v. Fischer,*
    983 F. Supp. 2d 320 (S.D.N.Y. 2013) ....................................................................14

*Deshawn E. v. Safir,*
    156 F.3d 340 (2d Cir. 1998).....................................................................................20

*Dinkins v. Brust,*
    No. 16-cv-1368, 2016 WL 7839338 (E.D.N.Y. Sept. 21, 2016) .............................25

*Doe v. Strange,*
    No. 15-cv-606, 2016 WL 1079153 (M.D. Ala. Mar. 8, 2016) .................................14

*Dolan v. City of Tigard,*
    512 U.S. 374 (1994)......................................................................................8, 11, 13

*Eisert v. Town of Hempstead,*
    No. 93-cv-2388, 1996 WL 50022 (E.D.N.Y. Feb. 5, 1996) ....................................22

*Feerick v. Sudolnik,*
    816 F. Supp. 879 (S.D.N.Y. 1993)..........................................................................27

*Ferguson v. City of Charleston,*
    532 U.S. 67 (2001)...................................................................................................15

*Fernandez v. City of New York,*
    502 F. App'x 48 (2d Cir. 2012) ...............................................................................25

*Frost v. R.R. Comm'n of Cal.,*
    271 U.S. 583 (1926)...................................................................................................9

*Gittens v. City of New York,*
    No. 10-cv-8502, 2011 WL 10618708 (S.D.N.Y. May 11, 2016) ............................25

*Goldman v. Belden,*
    754 F.2d 1059 (2d Cir. 1985)...................................................................................24

*Gonzalez v. Hasty*,
 802 F.3d 212 (2d Cir. 2015) .........................................................................22

*Hills Developers, Inc. v. City of Florence*,
 No. 15-cv-175, 2017 WL 1027586 (E.D. Ky. 2017) ........................................22

*Holiday v. Martinez*,
 68 F. App'x 219 (2d Cir. 2003) ..................................................................22, 23

*HUD v. Rucker*,
 535 U.S. 125 (2002) .......................................................................................23

*Jean v. Auto & Tire Spot Corp.*,
 No. 09-cv-5394, 2013 WL 2322834 (E.D.N.Y. May 28, 2013) ........................10

*Koontz v. St. Johns River Water Mgmt. Dist.*,
 133 S. Ct. 2586 (2013) ..............................................................................8, 9, 13

*Krimstock v. Kelly*,
 306 F.3d 40 (2d Cir. 2002) ..........................................................................26, 27

*Kuhnle Brothers, Inc. v. Cty. of Georgia*,
 103 F.3d 516 (6th Cir. 1997) .........................................................................21

*Landesbank Baden-Württemberg v. RBS Holdings USA Inc.*,
 14 F. Supp. 3d 488 (S.D.N.Y. 2014) ................................................................7

*Liberty Mut. Fire Ins. Co. v. Mystic Transp., Inc.*,
 No. 04-cv-1150, 2004 WL 2071703 (S.D.N.Y. Sept. 16, 2004) ......................10

*Louisiana Pac. Corp. v. Beazer Materials & Servs., Inc.*,
 842 F. Supp. 1243 (E.D. Cal. 1994) ..............................................................8, 9

*Machal, Inc. v. Jena Band of Choctaw Indians*,
 387 F. Supp. 2d 659 (W.D. La. 2005) ..............................................................26

*MedImmune, Inc. v. Genentech, Inc.*,
 549 U.S. 118 (2007) .......................................................................................19

*Memorial Hosp. v. Maricopa Cty.*,
 415 U.S. 250 (1974) ....................................................................................8, 13

*Moore v. City of E. Cleveland*,
 431 U.S. 494 (1977) ..................................................................................13, 14

*Moore v. Cty. of Suffolk*,
    851 F. Supp. 2d 447 (S.D.N.Y. 2012) ..................................................................26

*Morris v. NYC Employees' Ret. Sys.*,
    129 F. Supp. 2d 599 (S.D.N.Y. 2001) ..................................................................10

*Murray v. Town of N. Hempstead*,
    853 F. Supp. 2d 247 (E.D.N.Y. 2012) ..................................................................10

*Nelson v. Colorado*,
    __ S. Ct. __, 2017 WL 1390727 (Apr. 19, 2017) .......................................13, 16

*New York v. Burger*,
    482 U.S. 691 (1987) .............................................................................................15

*Nollan v. Cal. Coastal Comm'n*,
    483 U.S. 825 (1987) .................................................................................8, 11, 13

*Nollan v. Cal. Coastal Comm'n*,
    177 Cal. App. 3d 719 (Ct. App. 1986) .................................................................10

*North Carolina v. Alford*,
    400 U.S. 25 (1970) ...............................................................................................11

*Pac. Capital Bank v. Connecticut*,
    542 F.3d 341 (2d Cir. 2008) ..........................................................................19, 20

*Patel v. Searles*,
    305 F.3d 130 (2d Cir. 2002) .................................................................................14

*Perry v. Sindermann*,
    408 U.S. 593 (1972) ................................................................................................8

*Peters v. City of Wilkes-Barre*,
    No. 15-cv-152, 2016 WL 320748 (M.D. Pa. Jan. 27, 2016)................................26

*Rispler v. Spitz*,
    377 F. App'x 111 (2d Cir. 2010) .........................................................................10

*Riverside Syndicate, Inc. v. Munroe*,
    882 N.E.2d 875 (N.Y. 2008)................................................................................24

*Roman Catholic Diocese of Rockville Ctr. v. Inc. Vill. of Old Westbury*,
    No. 09-cv-5195, 2011 WL 666252 (E.D.N.Y. Feb. 14, 2011) ...........................21

*Samson v. California*,
    547 U.S. 843 (2006)...........................................................................................15

*Sassower v. Sheriff of Westchester Cty.*,
    824 F.2d 184 (2d Cir. 1987)...............................................................................10

*Shelly v. Kraemer*,
    334 U.S. 1 (1948)...............................................................................................23

*Simmons v. United States*,
    390 U.S. 377 (1968)...........................................................................................12

*Skinner v. Ry. Labor Executives' Ass'n*,
    489 U.S. 602 (1989).....................................................................................14, 15

*Smylis v. City of New York*,
    25 F. Supp. 2d 461 (S.D.N.Y. 1998)..................................................................10

*Sourovelis v. City of Philadelphia*,
    103 F. Supp. 3d 694 (E.D. Pa. 2015) ......................................1, 12, 14, 17, 20, 26

*Sourovelis v. City of Philadelphia*,
    No. 14-cv-4687, 2015 WL 12806512 (E.D. Pa. Nov. 4, 2015) ...........................9

*South Lyme Prop. Owners Ass'n v. Town of Old Lyme*,
    539 F. Supp. 2d 547 (D. Conn. 2008)................................................................21

*Susan B. Anthony List v. Driehaus*,
    134 S. Ct. 2334 (2014)......................................................................................18

*Stephens v. Cty. of Albemarle*,
    524 F.3d 485 (4th Cir. 2008) ..............................................................................8

*Stephens v. Cty. of Albemarle*,
    No. 04-cv-81, 2005 WL 3533428 (W.D. Va. Dec. 22, 2005) ............................8

*Town of Southold v. Town of E. Hampton*,
    406 F. Supp. 2d 227 (E.D.N.Y. 2005) ..............................................................21

*United States v. Babwah*,
    972 F.2d 30 (2d Cir. 1992)................................................................................12

*United States v. Goodwin*,
    717 F.3d 511 (7th Cir. 2013) ............................................................................15

*United States v. James Daniel Good Real Prop.*,
    510 U.S. 43 (1993) ..................................................................................................11, 16

*United States v. King*,
    736 F. 3d 805 (9th Cir. 2013) .............................................................................15

*United States v. Portillo-Aguirre*,
    311 F.3d 647 (5th Cir. 2002) .............................................................................12

*United States v. Scott*,
    450 F.3d 863 (9th Cir. 2006) .............................................................................15

*Vega v. Hempstead Union Free Sch. Dist.*,
    801 F.3d 72 (2d Cir. 2015) ...................................................................................7

*Wallace v. Kato*,
    549 U.S. 384 (2007) ...........................................................................................23

*Wallace v. New York*,
    40 F. Supp. 3d 278 (E.D.N.Y. 2014) .................................................................21

*Wilbur v. Harris*,
    53 F.3d 542 (2d Cir. 1995) .................................................................................26

## Codes and Statutes

42 U.S.C. § 1983 ....................................................................................................21, 23, 26

N.Y.C. Admin. Code § 7-701 *et seq.* ...........................................................................2

N.Y.C. Admin. Code § 7-703 .........................................................................................2

N.Y.C. Admin. Code § 7-709 .......................................................................................20

N.Y.C. Admin. Code § 7-709(a) .....................................................................................3

N.Y.C. Admin. Code § 7-710 (2016) ..............................................................................3

N.Y.C. Admin. Code § 7-723 .....................................................................................4, 20

N.Y.C. Admin. Code § 7-724 .........................................................................................4

N.Y.C. Admin. Code § 7-725 .........................................................................................3

N.Y.C. Admin. Code § 7-726 .........................................................................................3

**Rules**

Fed. R. Evid. 201(b)..................................................................................................................25

Second Circuit Rule 32.1.1(b)(2)..............................................................................................22

## INTRODUCTION

Plaintiffs are New Yorkers who were compelled, by threat of eviction, to waive their constitutional rights—including their rights to live with family members, to access the courts, and to be free from warrantless searches. Defendants (hereinafter, "the City") obtained these waivers using a draconian ordinance that has now been substantially amended in response to Plaintiffs' claims. But those amendments do not change the fact that Plaintiffs, along with hundreds or even thousands of other New Yorkers, remain subject to these perpetual waivers of their constitutional rights.

This is not only unjust; it is also unconstitutional. The "unconstitutional conditions" doctrine, articulated in a line of cases that often involve sophisticated parties represented by counsel, bars government from conditioning the exercise of its discretion on an agreement to give up a constitutional right. *See infra* pp. 8-9 (citing cases). The City ran afoul of the unconstitutional conditions doctrine when it conditioned its withdrawal of the threat of eviction on myriad waivers of constitutional rights.

In fact, the United States District Court for the Eastern District of Pennsylvania allowed a very similar claim to proceed past a motion to dismiss. *See Sourovelis v. City of Philadelphia*, 103 F. Supp. 3d 694, 707 (E.D. Pa. 2015). As in this case, law enforcement in *Sourovelis* used the threat of eviction to extract waivers of constitutional rights, including the right to live with family members. *Sourovelis* found that plaintiffs stated a claim under the unconstitutional conditions doctrine, and this Court should do the same.

The City's contrary arguments miss the mark. The City argues that Plaintiffs have failed to state a claim on the merits, but the City does not even discuss the unconstitutional conditions doctrine. And other threshold objections raised by the City also fundamentally misapprehend the nature of Plaintiffs' claims. The City argues Plaintiffs lack standing because they are unlikely to

1

be forced into similar agreements in the future, but Plaintiffs have standing because they are currently being injured by the challenged waivers. The City's suggestion of mootness is likewise meritless; the City's forward-looking changes to its laws do nothing for New Yorkers (like Plaintiffs) already forced to give up their rights. Moreover, the City's statute of limitations argument fails for essentially the same reason. Plaintiffs' liberty is curtailed every day these agreements remain in place, and that ongoing infringement of Plaintiffs' liberty by its very nature cannot be fixed to a past date.

The City's remaining arguments are equally meritless. Plaintiff Jameelah El Shabazz has not waived her claims, and in any event waiver is a factual question that cannot be resolved on a motion to dismiss. The City's speculation about possible state-law remedies is beside the point, as a possible violation of state law (assuming one exists) would not be a reason to sanction a violation of the Constitution. And, finally, the City's argument that individual officers and agencies should be dismissed from the suit is inconsequential—as the City does not contest that the City itself is a proper party—and is also wrong.

The basic question posed by this case is whether the government can use the threat of eviction to force innocent people into perpetual waivers of their constitutional rights. Because the answer is "no," the City's motion to dismiss should be denied.

## STATEMENT OF FACTS

### A.     New York City's Nuisance Abatement Law.

New York City's Nuisance Abatement Law allows the City to close a residence or business for a period up to one year when it can show—under a civil standard—that an enumerated criminal offense occurred on the premises. N.Y.C. Admin. Code § 7-701 *et seq.* Enumerated offenses include, among other things, drug crimes, stolen property offenses, prostitution, obscenity, and liquor law violations. *Id.* § 7-703.

At the time of the events in question, the ordinance allowed the City to initiate an action by obtaining an order closing off the premises in an *ex parte* proceeding, without any prior notice or opportunity to be heard. N.Y.C. Admin. Code § 7-710 (2016). After eviction, an individual would then have just three days to prepare for a hearing at which the court would decide whether the premises should remain closed for the duration of the litigation. *Id.*

In addition, at the time of the events in question, the ordinance allowed the City to evict residents and business owners simply because an offense *occurred* at their home or business, regardless of whether they were in any way at fault. *See*, *e.g.*, *City of New York v. Partnership 91, L.P.*, 277 A.D.2d 164, 165 (N.Y. App. Div. 2000); *City of New York v. Castro*, 160 A.D.2d 651, 652 (N.Y. App. Div. 1990). People could be evicted on the basis of offenses committed by friends, relatives, or even total strangers.

Subsequent to the filing of this case, the City amended the ordinance to partly address both of these infirmities. The law currently provides a defense based on innocence. *See* N.Y.C. Admin. Code §§ 7-725, 7-726. And the law currently limits the use of *ex parte* closing orders to alleged prostitution offenses and to dangerous or uninhabitable buildings. *Id.* § 7-709(a).

## B.     The Challenged Citywide Policies.

The City's draconian ordinance enabled even more draconian policies and practices. For years, NYPD lawyers churned out eviction cases using template documents, without meaningful investigation into the facts. Compl. ¶ 31. The City sought *ex parte* closing orders using affidavits from NYPD officers describing alleged conduct by individuals identified only as "John Doe" or "Jane Doe." *Id.* ¶ 32. These affidavits relied on statements by unnamed confidential informants, meaning both the accuser and the accused remained anonymous. *Id.* The City commenced these actions many months after the underlying offense allegedly occurred. *Id.* ¶ 33.

3

The City also had a policy and practice of settling these eviction actions on the condition that residents and business owners agree to waive constitutional rights. Compl. ¶¶ 35-37. To regain entry to their home or business—and to avoid the threat of protracted litigation in which innocence would not be a defense—individuals were compelled to waive their rights to live with family members, to be free from warrantless searches, and to have a hearing before a judge prior to imposition of future fines and other sanctions. *Id.* ¶ 36.[1]

Subsequent to the filing of this litigation, the City amended its ordinance to curtail these policies and practices. Among other things, the ordinance now provides that settlements must be tailored to the alleged underlying offense, N.Y.C. Admin. Code § 7-724, and that agreements to exclude an individual from a home must be limited in duration to one year or (in exceptional cases) three years, *id.* § 7-723. These changes will limit future settlements but do nothing for New Yorkers already compelled to waive their constitutional rights.

**C.    The Individual Plaintiffs.**

The Plaintiffs in this litigation are victims of the policies and practices described above. All three are currently subject to agreements waiving their constitutional rights.

    1.    David Diaz

On September 4, 2013, David Diaz received a call at work from his sister informing him that the NYPD was at his apartment threatening his family with eviction. Compl. ¶ 69. David spoke to an NYPD attorney on the phone, and the attorney told David the City had obtained an

---

[1] Judge Fern A. Fisher, Deputy Chief Administrative Judge for the New York City Courts, described these policies and practices in an Advisory Notice that is quoted in the Complaint. Compl. ¶ 38. According to Judge Fisher, "occupants . . . do not have notice that their dwelling place is being closed," supporting "affidavits are very general and do not reference an individual defendant," "[m]any cases are commenced against Jane Doe, so there are virtually no claims in the affidavit of merit against individuals," "very few cases involve any direct criminal allegations against the named defendants," and "virtually every time there is a stipulation of settlement where the defendants waive all of their rights." *Id.*

*ex parte* order closing the apartment. *Id.* ¶ 70. David had no prior notice of the City's allegations and no opportunity to be heard before the apartment was ordered closed. *Id.* ¶ 68.

The City obtained this *ex parte* closing order on the basis of an affidavit claiming that an unnamed confidential informant purchased drugs from an unnamed individual, as well as a May 2013 raid that turned up a small amount of contraband. Compl. ¶ 67. David was not accused of any crime, and he did not know who was responsible for bringing the contraband into the home. *Id.* ¶¶ 63, 65. Several family members were staying at David's apartment at the time of the May 2013 raid. *Id.* ¶ 64.

While the City was legally entitled to close David's apartment, the NYPD attorney told David the City would allow the family to stay temporarily to avoid throwing David's infant daughter onto the street. Compl. ¶ 70. The attorney, however, told David he would have to enter a more permanent agreement to avoid eviction. *Id.* Two days later, David signed an agreement under which he agreed to exclude several family members—including his two brothers—from the apartment. *Id.* ¶¶ 74, 98. One of David's brothers is currently homeless because the agreement prevents David from giving him a place to live. *Id.* ¶ 77.

2. Jameelah El-Shabazz

On September 27, 2011, Jameelah El-Shabazz returned home from work to find a notice on the door informing her that the apartment had been ordered closed in an *ex parte* proceeding. Compl. ¶¶ 83, 85-86. Jameelah had no prior notice and no opportunity to be heard. *Id.* ¶ 85.

The City obtained this *ex parte* closing order on the basis of an affidavit claiming that an unnamed confidential informant purchased drugs from an unnamed individual at the apartment, as well as a May 2011 raid during which the NYPD found forty-five paper cups filled with a white powdery substance. Compl. ¶ 84. Lab testing revealed that the white substance was *not*

illegal drugs; in fact, the cups were filled with crushed eggshells that Jameelah uses for religious purposes. *Id.* ¶¶ 80-81. Nonetheless, the affidavit described the substance as "cocaine." *Id.* ¶ 84.

Jameelah was able to obtain the assistance of a legal aid attorney, and the attorney signed a settlement on Jameelah's behalf to lift the closing order. Compl. ¶¶ 87, 90. As a condition of settlement, the City required that Jameelah agree to permanently exclude her son Akin from the apartment. *Id.* ¶¶ 89, 101.

     3.   <u>Sung Cho</u>

On December 17, 2013, Sung Cho arrived at his business, a laundromat near the northern tip of Manhattan, and found a notice on the door informing him that the NYPD had filed an action seeking to close the premises. Compl. ¶ 46. Sung had just one week before he had to appear at a hearing—on Christmas Eve—to show cause why his business should not be ordered closed for the duration of the litigation. *Id.* ¶ 47.

The City targeted Sung on the basis of two stolen-property offenses that allegedly occurred at the business—one almost seven months earlier, and the other almost a year earlier. Compl. ¶ 46. Both incidents involved sting operations by undercover NYPD officers who offered to sell stolen electronics to customers and other members of the public. *Id.* ¶¶ 42-43. Neither incident involved Sung or his employees. *Id.* ¶ 44.

Faced with the threat of protracted litigation under a law that did not include any defense based on innocence—as well as the looming risk that the business would be ordered closed at the Christmas Eve hearing—Sung agreed to a settlement. Compl. ¶ 49. Sung agreed to allow warrantless searches (for *any* criminal activity, not just stolen property crimes) and agreed to provide the NYPD unfettered access to the business's surveillance cameras. *Id.* ¶ 52. In addition, Sung agreed to waive his right to a hearing before a judge in the event the NYPD accused Sung

or his "customers, employees, and/or representatives" of any future offense listed in the City's Nuisance Abatement Law. *Id.* ¶ 53. Lastly, Sung agreed that this agreement would be made part of any sale of the business, so that it would bind any future owner. *Id.* ¶ 55.

## STANDARD OF REVIEW

On a motion to dismiss, the court must "accept as true all facts alleged in the complaint" and "draw all reasonable inferences in favor of the plaintiff." *Landesbank Baden-Württemberg v. RBS Holdings USA Inc.*, 14 F. Supp. 3d 488, 497 (S.D.N.Y. 2014). Applying this standard, the ultimate question is whether plaintiffs have pled a "plausible" claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[P]lausibility is a standard lower than probability," and a court "may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 184-85 (2d Cir. 2012). Instead, the court must ask "whether plaintiffs allege enough to 'nudge[ ] their claims across the line from conceivable to plausible.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) (quoting *Twombly*, 550 U.S. at 570).

## ARGUMENT

This memorandum first addresses the City's argument that Plaintiffs have failed to state a claim on the merits and then proceeds to address the various threshold objections interposed by the City—namely standing, mootness, time-bar, waiver, alternative state-law remedies, and the inclusion of officers and agencies as defendants.

## I.   Plaintiffs Have Stated A Claim For Relief On The Merits.

The City contends that Plaintiffs have failed to state a claim because they have not "alleged any facts suggesting that their agreement to the settlements' terms . . . was the product of government coercion." MTD at 14. The City, however, takes a narrow view of "coercion" that focuses on overt forms of coercion— *i.e.*, lies, threats, and violence—and ignores the more

covert coercion that is the focus of the unconstitutional conditions doctrine. *Id.* at 15-19. The City does not even mention the unconstitutional conditions doctrine, much less attempt to explain why it should not apply. *Id.* Plaintiffs have, in fact, more than adequately pled a claim for relief under the unconstitutional conditions doctrine.

The unconstitutional conditions doctrine applies when government threatens to "withhold [a] benefit," or refuse some other discretionary action, "because someone refuses to give up constitutional rights." *Koontz v. St. Johns River Water Mgmt. Dist.*, 133 S. Ct. 2586, 2596 (2013). The doctrine applied when government withheld building permits from property owners who would not give up property rights, *Dolan v. City of Tigard*, 512 U.S. 374 (1994), *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825 (1987); withheld employment from a professor based on his speech, *Perry v. Sindermann*, 408 U.S. 593 (1972); and withheld healthcare benefits from people who exercised the right to travel, *Memorial Hosp. v. Maricopa Cty.*, 415 U.S. 250 (1974). *See also Koontz*, 133 S. Ct. at 2594 (citing these cases as examples of the doctrine).

Plaintiffs have stated a claim under the unconstitutional conditions doctrine because they allege that the City conditioned a discretionary act—withdrawal of the threat of eviction—on agreements to waive constitutional rights. Compl. ¶ 5, 35-37, 52-53, 74, 89, 109-110, 118, 128, 137, 149, 159. Courts hold that the doctrine applies to conditions imposed in the settlement context, as it would "vitiate the unconstitutional conditions doctrine to conclude that it cannot apply to an offer of settlement." *Stephens v. Cty. of Albemarle*, No. 04-cv-81, 2005 WL 3533428, at *6 (W.D. Va. Dec. 22, 2005) (First Amendment challenge to non-disclosure provision);[2] *see*

---

[2] On a subsequent appeal in *Stephens*, the Fourth Circuit implicitly affirmed the application of the unconstitutional conditions doctrine to settlements. 524 F.3d 485, 491 (4th Cir. 2008) (stating that the case rested on "well established" constitutional principles). The Fourth Circuit nonetheless found the government entitled to summary judgment because the plaintiffs, who were not parties to the agreement, failed to show that they were injured. *Id.* at 493.

*also Louisiana Pacific Corp. v. Beazer Materials & Servs., Inc.*, 842 F. Supp. 1243, 1251 (E.D. Cal. 1994). The United States District Court for the Eastern District of Pennsylvania therefore applied the doctrine to a similar challenge to agreements exacted via Philadelphia's civil forfeiture program. *See Sourovelis v. City of Philadelphia*, 103 F. Supp. 3d 694 (E.D. Pa. 2015).[3] In that case, plaintiffs alleged that law enforcement "require[d] property owners to surrender constitutional rights in order to either have their homes or other real property unsealed or to settle or dismiss the forfeiture petitions." *Id.* at 707. The court held that this claim survived a motion to dismiss, explaining that the challenged agreements were not truly voluntary because the "choice between the rock and the whirlpool" is "no choice" at all. *Id.* (quoting *Frost v. R.R. Comm'n of Cal.*, 271 U.S. 583, 593 (1926)).[4] This Court should hold the same.

The City fails to mention the unconstitutional conditions doctrine, and the arguments that it does make are irrelevant in that context. The City, for instance, argues that David's claim of coercion is "undercut by the alternative that was before him: namely, to proceed to a hearing," MTD at 18, but nearly *every* unconstitutional conditions case involves a choice to either forego a discretionary benefit (here, withdrawal of the threat of eviction) or else give up a constitutional right. *See Koontz*, 133 S. Ct. at 2596 ("Virtually all of our unconstitutional conditions cases involve a gratuitous governmental benefit of some kind.").

The City likewise misses the mark when it argues Sung and Jameelah were not coerced because they were represented by counsel. MTD at 15-17. Many unconstitutional conditions cases involve sophisticated parties—real estate developers being the most obvious—including

---

[3] The plaintiffs in *Sourovelis*, like Plaintiffs here, were represented *pro bono* by the Institute for Justice.

[4] Ultimately, this claim was resolved by a class-wide settlement under which the Philadelphia District Attorney's Office and the City of Philadelphia agreed not to enforce broad categories of settlement agreements, including agreements forcing plaintiffs to exclude family members from their homes. *See* 2015 WL 12806512, at *3 (E.D. Pa. Nov. 4, 2015).

parties with attorneys. *See, e.g., Nollan v. Cal. Coastal Comm'n*, 177 Cal. App. 3d 719, 720 (Ct. App. 1986) (listing team of attorneys representing property owners). This makes sense, as a lawyer can explain the "choice" being offered but cannot make that choice less coercive. Regardless of whether a lawyer is present, the choice still has to be made.

Almost all the cases cited by the City are irrelevant because they are not unconstitutional conditions cases. The City cites cases discussing *other* grounds for challenging waiver of a constitutional right,[5] or challenges to settlement agreements between private parties that do not implicate constitutional rights.[6] The City does not cite any case dismissing an unconstitutional conditions claim on a motion to dismiss, without any opportunity to develop a factual record regarding critical questions such as the nature of the condition imposed or the government's justification for imposing it.

While *Smylis v. City of New York*, 25 F. Supp. 2d 461, 465 (S.D.N.Y. 1998), could be read as an unconstitutional conditions case, it still misses the mark. *Smylis* was decided on summary judgment, not a motion to dismiss. *Id.* at 462. Moreover, while *Smylis* rejects the claim that agreements to plead guilty are inherently coercive, *id.* at 465-66, the instant case does not involve a challenge to a guilty plea. Guilty pleas do not typically violate the unconstitutional conditions doctrine because there is an almost perfect fit between the asserted governmental

---

[5] *See Murray v. Town of N. Hempstead*, 853 F. Supp. 2d 247, 260 (E.D.N.Y. 2012) (government failed to show that waiver was sufficiently explicit); *Morris v. NYC Employees' Retirement Sys.*, 129 F. Supp. 2d 599, 610-11 (S.D.N.Y. 2001) (government provided inadequate explanation of the rights being waived); *see also Sassower v. Sheriff of Westchester Cty.*, 824 F.2d 184, 190 (2d Cir. 1987) (litigant waived right to a hearing by failing to appear).

[6] *See Rispler v. Spitz*, 377 F. App'x 111, 112 (2d Cir. 2010) (party to settlement between private parties claimed he was "ill and taking medication"); *Jean v. Auto & Tire Spot Corp.*, No. 09-cv-5394, 2013 WL 2322834, at *5 (E.D.N.Y. May 28, 2013) (party to settlement between private parties did not allege any form of coercion); *Liberty Mut. Fire Ins. Co. v. Mystic Transp., Inc.*, No. 04-cv-1150, 2004 WL 2071703, at *2 (S.D.N.Y. Sept. 16, 2004) (party to settlement between private parties claimed attorney had conflict of interest).

interest (enforcing the law) and the infringement of liberty imposed (punishment for violating the law). *See Brady v. United States*, 397 U.S. 742, 758 (1970).[7] As explained below, that necessary degree of fit is absent here, where the government exacted waivers of constitutional rights from people who were not convicted of anything.

Plaintiffs do not assert that *all* settlements violate the Constitution—any more than *all* conditional building permits violate the Constitution under *Nollan* and *Dolan*. Rather, waivers of constitutional rights in settlements must be assessed under the standards of the unconstitutional conditions doctrine. Plaintiffs have stated a claim that the waivers here are unconstitutional for two reasons (corresponding to the two proposed classes). First, the waivers were obtained while two Plaintiffs were subject to unlawful, *ex parte* orders excluding them from their homes. And, second, the City has not identified any interest that could justify exacting perpetual waivers of constitutional rights from Plaintiffs who have not been convicted of any crime.

A.    Count I: The Closing Order Class.

Count I of the Complaint contends that the waivers obtained from David and Jameelah— and other similarly-situated persons—are unlawful because they were extracted using *ex parte* closing orders that run afoul of clearly established Supreme Court precedent. Compl. ¶¶ 170-77. The Supreme Court has held that, absent exigent circumstances, government cannot seize real property based on alleged criminal violations without first providing notice and an opportunity to be heard. *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 62 (1993). The City's *ex parte* closing procedure flatly violates this precedent. And that violation remains relevant because it renders the challenged agreements inherently coercive.

---

[7] To preserve this nexus, the Supreme Court has underscored the importance of policing guilty pleas to ensure that there is evidence that the person pleading guilty did commit the crime. *See North Carolina v. Alford*, 400 U.S. 25, 38 n.10 (1970) ("Because of the importance . . . of insuring that guilty pleas are a product of free and intelligent choice . . . pleas coupled with claims of innocence should not be accepted unless there is a factual basis for the plea.").

Cases—like this one—where the government forces a person to trade one constitutional right for another fall into a special category of unconstitutional conditions cases in which no consideration of the government's asserted interests is required because no interest can possibly justify the condition. *See*, *e.g.*, *Simmons v. United States*, 390 U.S. 377, 394 (1968) ("[W]e find it intolerable that one constitutional right should have to be surrendered in order to assert another."). After all, where the "choice" offered is between giving up one right or another, the "'benefit' to be gained is that afforded by another provision of the Bill of Rights," *id.*, and it is assured that *some* right will be infringed whatever choice is made. Both Jameelah and David fall into this category, as they were forced to choose between waiving their rights or else remaining subject to a closing order that was itself unconstitutional. Compl. ¶¶ 67, 74, 84, 90, 174. The choice that they were offered was thus inherently unconstitutional.[8]

The court in *Sourovelis* allowed a similar claim to proceed past a motion to dismiss. In that case, Philadelphia routinely obtained *ex parte* orders shutting down homes and other properties and used the threat of eviction to obtain agreements waiving constitutional rights. 103 F. Supp. 3d at 698, 704. The court in *Sourovelis* allowed a challenge to this *ex parte* procedure to proceed past a motion to dismiss, and this Court should do the same.

B.     Counts II-V: The Innocent Occupant Class.

Counts II-V of the Complaint, meanwhile, all relate to the same overarching claim that the City violated the unconstitutional conditions doctrine when it used the threat of eviction to

---

[8] In this respect, this case is akin to *United States v. Babwah*, 972 F.2d 30, 34 (2d Cir. 1992), which found that an agreement to waive the Fourth Amendment was invalid where the "purpose of extending [the defendant's] custody seems to have been the hope of obtaining his consent," so that there could "be no conclusion other than that [the defendant's] consent was gotten through exploitation of the unlawful seizure." *See also United States v. Portillo-Aguirre*, 311 F.3d 647, 659 (5th Cir. 2002). Here the connection between the unlawful seizure and the waiver is even more obvious, as the offer to lift the unlawful seizure in exchange for the waiver was stated expressly rather than implied by the circumstances. *See*, *e.g.*, Compl. ¶ 174.

force innocent people—people not convicted of a crime—into perpetual waivers of constitutional rights. Compl. ¶¶ 178-209. These claims do call for consideration of the government's asserted interests, but the City has not identified *any* interest to justify these conditions, much less an interest so compelling that it would justify upholding the conditions on a motion to dismiss.

Unconstitutional conditions cases hold that such conditions must be assessed under a two-part test that looks to both "nexus" and "proportionality." *Koontz*, 133 S. Ct. at 2595. The first requirement, "nexus," asks whether there is some logical connection between the government's asserted interest and the condition imposed. *See Nollan*, 483 U.S. at 837-38. And the second requirement, "proportionality," asks whether the asserted interest is sufficiently strong to justify the condition. *See Dolan*, 512 U.S. at 395. This is essentially the same tailoring analysis that courts perform in any constitutional case, and the degree of "fit" required varies depending on the right at issue. So, for instance, when the right waived was the right to travel, the Court applied strict scrutiny. *Memorial Hosp.*, 415 U.S. at 262.[9]

Turning to the particular constitutional rights at issue, the City has identified no interest that could justify upholding these permanent constitutional disabilities.

### 1. *The Familial Association Subclass (Count V).*

Plaintiffs have stated a claim that Jameelah and David were unlawfully compelled to agree to perpetual waivers of their right to live with family in the home. Compl. ¶¶ 202-09. The Supreme Court affirmed the importance of this right in a case that struck down a law restricting

---

[9] While Counts III-V challenge waivers of particular constitutional rights, Count II alleges that, regardless of the right at issue, the City cannot justify imposing perpetual waivers of constitutional rights on innocent people simply because a crime *occurred* in proximity to their home or business. *See* Compl. ¶¶ 178-85. The government cannot limit a person's constitutional rights based on alleged criminal violations without establishing that the person is in some way responsible for the violations. *Cf. Nelson v. Colorado*, __ S. Ct. __, 2017 WL 1390727, at *6 (Apr. 19, 2017) (the government "may not presume a person, adjudged guilty of no crime, nonetheless guilty *enough* for monetary exactions").

cohabitation by family members. *See Moore v. City of E. Cleveland*, 431 U.S. 494, 499 (1977); *see also Patel v. Searles*, 305 F.3d 130, 137 (2d Cir. 2002) ("[C]onstitutional protections for associational interests are at their apogee when close family relationships are at issue."). Infringements of this right are assessed under strict scrutiny, *Corso v. Fischer*, 983 F. Supp. 2d 320, 331 (S.D.N.Y. 2013), so these waivers must be subjected to strict scrutiny as well.

The City cannot possibly establish that these waivers so obviously satisfy strict scrutiny that it is entitled to prevail on a motion to dismiss. The City has an interest in preventing alleged violations of the criminal laws, but the City can (and does) pursue that interest in all manner of ways that do not involve restricting the most intimate familial relationships of citizens who have not been convicted of anything. Indeed, even where people have been *convicted* of serious offenses, courts carefully scrutinize limitations on this right. *See*, *e.g.*, *Corso*, 983 F. Supp. 2d at 335 (invalidating prison rule limiting intimate association between guards and convicted criminals); *Doe v. Strange*, No. 15-cv-606, 2016 WL 1079153, at *15 (M.D. Ala. Mar. 8, 2016) (refusing to dismiss case challenging restriction on sex offenders living with related children). Plaintiffs, who have not been convicted of anything, have surely stated a claim.

A similar claim survived a motion to dismiss in *Sourovelis*. In that case, Philadelphia law enforcement used the threat of eviction to force individuals into agreements "indefinitely barring individuals, such as relatives, from entering property." 103 F. Supp. 3d at 707. The court rejected the argument that this failed to state a claim, and this Court should do the same.

### 2. *The Warrantless Search Subclass (Count III)*.

Plaintiffs also have stated a claim that Sung Cho was unlawfully compelled to give up his Fourth Amendment right to be free from warrantless searches. Compl. ¶¶ 186-93. This right "is basic to a free society." *Camara v. Mun. Court*, 387 U.S. 523, 528 (1967). Government may condition lawful activity on consent to warrantless searches only in "limited circumstances,

14

where the privacy interests implicated by the search are minimal, and where an important governmental interest furthered by the intrusion would be placed in jeopardy by a requirement of individualized suspicion." *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 624 (1989).

Once again, the City cannot possibly establish that this waiver so obviously satisfies the Fourth Amendment that the City is entitled to prevail on a motion to dismiss. Courts allow the government to depart from the warrant requirement only when it has a uniquely substantial interest that is "divorced from the State's general interest in law enforcement." *Ferguson v. City of Charleston*, 532 U.S. 67, 79 (2001). And, even when the government points to such an interest, the departure from the warrant requirement must have a "properly defined scope" that "limit[s] the discretion of the inspecting officers." *New York v. Burger*, 482 U.S. 691, 703 (1987). Here, the City's interest in preventing future crimes is exactly the kind of "general interest in law enforcement" that cannot justify suspending the warrant requirement. And the blanket searches at issue are not limited in scope, and instead open up residents and business owners to virtually unlimited invasion of their privacy. *See*, *e.g.*, Compl. ¶ 52. This is exactly the kind of blanket exception to the warrant requirement that Supreme Court case law forbids, and it cannot be upheld on a motion to dismiss.[10]

---

[10] This kind of blanket consent to search is sometimes imposed on people who have been convicted of a crime, but even then courts are careful to impose qualifications and limitations that demonstrate the impermissibility of imposing such a restriction on a person who has not been convicted of anything. *Samson v. California*, 547 U.S. 843, 847 (2006), upheld a requirement that parolees consent to suspicionless searches, but emphasized that parolees were protected from "arbitrary, capricious, or harassing" searches. Courts have since questioned the extension of this rule to "lower level offenders," *United States v. King*, 736 F. 3d 805, 806 (9th Cir. 2013), or restrictions not "connected to [the offender's] offense, history, and personal characteristics," *United States v. Goodwin*, 717 F.3d 511, 523 (7th Cir. 2013). Even more relevant, the Ninth Circuit has held that pretrial detainees cannot be required to consent to warrantless searches as a condition of release, as they have not been convicted. *United States v. Scott*, 450 F.3d 863, 872 (9th Cir. 2006).

3. *The Access To Courts Subclass (Count IV).*

Finally, Plaintiffs have stated a claim that Sung Cho was compelled to give up his right of access to the courts, as his agreement allows the NYPD to impose closing orders and monetary sanctions without any need to first make a case to a judge. Compl. ¶¶ 194-201. This right of access to the courts can be infringed only in "extraordinary situations where some valid governmental interest is at stake." *Boddie v. Connecticut*, 401 U.S. 371, 378-79 (1971).

Again, the City cannot establish that this waiver so obviously satisfies the Constitution that the City is entitled to prevail on a motion to dismiss. The City has not pointed to any interest that would justify allowing the NYPD to impose sanctions for future alleged unlawful behavior without any requirement to first present evidence to a judge. Even prisoners—people convicted of a crime—have a right to access the courts that cannot be totally extinguished. *See Bounds v. Smith*, 430 U.S. 817, 821-22 (1977). And no case has ever held that government can impose sanctions for alleged criminal offenses without first having to prove to a neutral judge that the offense occurred. *See Nelson*, 2017 WL 1390727, at *3 ("Absent conviction of a crime, one is presumed innocent.").[11] While the government has an interest in addressing future criminal violations, the government can (and does) uphold that interest in a variety of ways that do not involve removing innocent individuals from the protection of the judicial process.

At least two cases have applied the unconstitutional conditions doctrine to agreements restricting this right. *Clark v. Cty. of Placer*, 923 F. Supp. 1278, 1288-89 (E.D. Cal. 1996), held that a state actor violated the Constitution by requiring a waiver of constitutional claims—including a claim of sex discrimination—as a condition of racing at a local racetrack. And in

---

[11] The government can, of course, seize persons or property prior to conviction where there is some risk that the person or property will flee the jurisdiction, but that principle has been limited to circumstances where there is in fact such a risk. *James Daniel Good*, 510 U.S. at 62.

*Sourovelis*, the court found that plaintiffs survived a motion to dismiss where they alleged that the government used the threat of eviction to require that individuals "prospectively waive the right to assert constitutional defenses." 103 F. Supp. 3d at 707. Just as plaintiffs in *Sourovelis* survived a motion to dismiss, Plaintiffs' claims here should survive as well.

    C.    <u>Counts VI-VIII: The Individual Claims.</u>

The remaining Counts in the Complaint largely track the foregoing, but supplement the class-wide claims with individualized circumstances that cannot be generalized across an entire class. *See* Compl. ¶¶ 210-229. In this respect, the relationship between the class-wide and individualized claims can be analogized to a discrimination suit in which plaintiffs claim both that an employer maintained discriminatory policies affecting a class of employees *and* that the particular circumstances of the employees' cases make out a viable claim. *See*, *e.g.*, *Barrett v. Forest Labs., Inc.*, 39 F. Supp. 3d 407 (S.D.N.Y. 2014). While the full set of Plaintiffs' allegations can be found in the Complaint, this section highlights particular allegations that shore up Plaintiffs' individual claims.

The individualized allegations in the Complaint bolster Plaintiffs' claims that they were coerced. For instance, both David and Jameelah had infants in their apartments at the time their apartments were ordered closed—a circumstance that magnifies the consequences associated with eviction. Compl. ¶¶ 70, 74, 88. Both David and Jameelah also include allegations that call into doubt the City's repeated assurances (MTD at 17-18) that they were fully informed about the rights they were giving up. Jameelah alleges that she was not aware of the provision excluding her son from the apartment when her attorney signed the agreement. Compl. ¶¶ 90, 92. David, meanwhile, alleges that an NYPD attorney approached him in person without properly identifying himself—leaving David with the impression that this was his court-appointed lawyer—and advised him to settle. *Id.* ¶¶ 73-74.

17

The individualized allegations also erode any conceivable justification the government might assert for imposing these agreements. Jameelah asserts that the government sought to evict her based on a false statement in an affidavit that identified crushed eggshells as "cocaine." Compl. ¶ 84. And Sung alleges that the underlying offense was created by undercover NYPD officers and would not have occurred without the City's involvement. *Id.* ¶¶ 41-42. Sung also alleges that he was forced to waive not only his own rights, but also the rights of future owners of his business. *Id.* ¶ 55. The government has no interest that would justify limiting the rights of future owners with no connection to the business at the time of the alleged underlying offense. These individual circumstances afford an additional basis to hold that Plaintiffs have stated a claim for relief.

## II.     Plaintiffs Have Standing, And Plaintiffs' Claims Are Not Moot.

The City argues that Plaintiffs do not have standing to seek prospective injunctive relief and that "Plaintiffs' lawsuit has also been outpaced by the legislative process." MTD at 20. Both arguments are unavailing.

### A.     Plaintiffs Have Standing.

The test for Article III standing has three parts: (1) injury in fact, (2) causation, and (3) redressability. *See*, *e.g.*, *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014). Each of the Plaintiffs satisfies all three elements.

All of the Plaintiffs are currently being injured, as they are subject to agreements that infringe their constitutional rights. David and Jameelah are subject to agreements that—as set forth above—force them to exclude individuals from their home in violation of their right to familial association. Compl. ¶¶ 74, 89. David's brother is currently homeless as a result, and David himself is injured because his brothers cannot legally come to his apartment to babysit his daughter while he is at work. *Id.* ¶¶ 99-100. Jameelah is likewise required to exclude her own

son from her home. *Id.* ¶ 102. Sung, meanwhile, is injured because he is subject to an agreement that includes a permanent waiver of his Fourth Amendment rights and right to access the courts. *Id.* ¶¶ 95-96. Sung is required to pay money to comply with this agreement—including maintaining a video surveillance system—and he is also injured because the requirement to include these conditions in any sale of his business reduces its value. *Id.*

These injuries are traceable to the City's conduct and would be redressed by a favorable decision. These agreements were extracted from Plaintiffs as a result of the City's policy and practice of forcing New Yorkers to enter into agreements waiving their constitutional rights. Compl. ¶¶ 49, 74, 89. And Plaintiffs' injuries would also be redressed by a favorable judgment, as Plaintiffs seek injunctive and declaratory relief that these agreements are unconstitutional and unenforceable. *Id.* ¶¶ D-G.

Nonetheless, the City contends that "none of the Plaintiffs have standing to seek prospective injunctive relief because none of them have alleged that they are likely to be subject to the City's Nuisance Abatement laws again" and that "to cognizably state such a claim, Plaintiffs would have to allege that they are likely" to "engage in" so-called "nuisance-creating behavior." MTD at 20. The City flatly misunderstands Plaintiffs' claims. As set forth above, Plaintiffs are already subject to an ongoing injury—the permanent waiver of their rights. A party subject to an agreement has standing to file suit for a judgment that the agreement cannot be enforced, just as a party subject to a law can file suit to enjoin the law's application. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 130 (2007); *see also Capital Bank, NA v. Connecticut*, 542 F.3d 341, 350 (2d Cir. 2008) (plaintiff had standing to challenge law that it could "legitimately fear" would be enforced against it). That Plaintiffs may not necessarily be

forced into other settlements in the future is beside the point, as Plaintiffs are injured by the agreements that are currently in force.[12]

B.     Plaintiffs' Claims Are Not Moot.

The City also argues that the case has been mooted by recent amendments to the Nuisance Abatement Law, as "the acts that Plaintiffs seek to enjoin regarding their purported 'closing order class,' 'innocent occupant class,' and their 'familial association sub-class' are now statutorily impossible." MTD at 20-21.

Plaintiffs' claims are not moot because these prospective changes to the law do not alter the fact that Plaintiffs (along with hundreds or potentially thousands of prospective class members) continue to be subject to waivers of their constitutional rights. As the *Sourovelis* court explained—when the City of Philadelphia argued that the unconstitutional conditions claims in that case were mooted by a prospective change in policy—these "changed policies and practices make no guarantees as to these settlement arrangements, and accordingly, this [claim] is not moot." 103 F. Supp. 3d at 702.[13]

---

[12] Plaintiffs also seek an injunction barring the City from "obtaining such agreements in the future." Compl. ¶¶ D(iii)–(v). To the extent these claims are not moot, *see infra* note 13, Plaintiffs have standing to seek this relief in their capacity as proposed class representatives. *See Deshawn E. v. Safir*, 156 F.3d 340, 345 (2d Cir. 1998). In *Deshawn E.*, the Second Circuit held that class representatives had standing to challenge interrogation practices because their past injuries could be redressed by an order preventing their statements from being used, and the Second Circuit also held that those plaintiffs could seek an injunction barring the practices in future interrogations in order to "provide future relief for other members of the class." *Id.*

[13] Plaintiffs' claim for an injunction barring the City from obtaining such agreements in the future (*see supra* note 12) is now partly—but only partly—moot. Plaintiffs' claim seeking to prevent future perpetual waivers of the right to familial association is moot because the law now flatly bars those waivers. N.Y.C. Admin. Code § 7-723. Outside that limited context, Plaintiffs' claims seeking to bar future agreements are not moot because the amendments limit but do not abolish *ex parte* closing orders, *id.* § 7-709, and do not bar the City from obtaining waivers of the right to be free from warrantless searches and the right of access to the courts.

**III.    David And Jameelah's Claims Are Not Time-Barred.**

The City also claims that David and Jameelah's claims are barred by the three-year statute of limitations applicable to actions under Section 1983. But this argument fails for essentially the same reason that the City's standing and mootness arguments fail; this case is not time-barred because Plaintiffs are *still subject* to unconstitutional restrictions on their liberty.

Numerous cases stand for the proposition that an ongoing violation of the Constitution cannot be insulated from legal challenge by the passage of time. In *Wallace v. New York*, 40 F. Supp. 3d 278, 303 (E.D.N.Y. 2014), for instance, the court held that state-law restrictions on where sex offenders might live could be challenged because "[a]lthough the current State registration requirements and residency restrictions took effect more than three years before this case was filed, they remain in effect today."  Likewise, *South Lyme Property Owners Ass'n v. Town of Old Lyme*, 539 F. Supp. 2d 547, 557 (D. Conn. 2008), held that a "seasonal use" zoning restriction on property could be challenged notwithstanding the statute of limitations because the restriction "would constitute the equivalent of a continuing invasion of plaintiffs' property rights akin to a continuing trespass." *See also Kuhnle Brothers, Inc. v. Cty. of Georgia*, 103 F.3d 516, 522 (6th Cir. 1997) (challenge to an ordinance was not time-barred because the ordinance "barred [plaintiff] from using the roads in question on an ongoing basis"); *Roman Catholic Diocese of Rockville Ctr. v. Inc. Vill. of Old Westbury*, No. 09-cv-5195, 2011 WL 666252, at *14 (E.D.N.Y. Feb. 14, 2011) (zoning restriction could be challenged although it had been in effect more than three years); *Town of Southold v. Town of E. Hampton*, 406 F. Supp. 2d 227, 238 (E.D.N.Y. 2005), *aff'd in part and vacated in part on other grounds,* 477 F.3d 38 (2d Cir. 2007) (restriction on operating ferry service could be challenged although it had been in effect more than three years).

At least one case has applied this continuing violation doctrine to an unconstitutional conditions challenge. In *Hills Developers, Inc. v. City of Florence*, No. 15-cv-175, 2017 WL 1027586 (E.D. Ky. 2017), a property developer raised an unconstitutional conditions challenge to a restriction on leasing property that was imposed by a municipality years prior as a condition of granting a zoning request. *Id.* at *1. The court held that the developer could challenge the validity of the restriction—notwithstanding the statute of limitations—because the "[d]eveloper's alleged injury, the inability to rent its property, has 'continue[d] to accrue.'" *Id.* at *5. Likewise, the agreements exacted by the City can be challenged today because they remain in effect today.

The City cites no binding authority for its contention that a continuing restriction on a person's liberty can be insulated from constitutional challenge by the passage of time. The City cites *Gonzalez v. Hasty*, 802 F.3d 212 (2d Cir. 2015), but in that case a plaintiff challenged his detention in solitary confinement three years after the detention had ended. *Id.* at 219. That case does not hold that a plaintiff *still confined in violation of the Constitution* could be forever barred from challenging his confinement because he had been confined for over three years.[14] Courts in this Circuit hesitate to use the continuing violation doctrine to allow plaintiffs to seek damages for past conduct outside the limitations period, but it does not follow that an ongoing restriction on a person's liberty can be cemented into place because it has been ongoing for a long time.

The closest any case comes to such a holding is *Holiday v. Martinez*, 68 F. App'x 219, 222 (2d Cir. 2003), but that is a pre-2007, unpublished decision and cannot be cited as precedent. *See* Second Circuit Rule 32.1.1(b)(2). That case also only reached the statute-of-limitations issue

---

[14] *Abidekun v. Department of Housing Preservation & Development*, No. 96-7316, 1996 WL 679491 (2d Cir. 1996) (summary order), is similarly distinguishable. In that case the plaintiff's house was foreclosed and title transferred more than three years before plaintiff filed suit, and the plaintiff was no longer subject to any legal obligation to the government. *Id.* at *2; *see also Eisert v. Town of Hempstead*, No. 93-cv-2388, 1996 WL 50022, at *4-5 (E.D.N.Y. Feb. 5, 1996) (employment position was denied more than three years before).

as an alternative ground for its decision, after holding that the plaintiff was bound by a prior state-court judgment upholding the condition. 68 F. App'x at 222. And, in any event, that case can be distinguished on its facts. The familial association claim at issue in that case was of a different nature, as the plaintiff lived in public housing (*see id.* at 220) and the government was exercising its authority as a landlord to exclude the son. *See HUD v. Rucker*, 535 U.S. 125, 135 (2002) (holding that public housing authority may evict residents based on actions of family members, as government in that context is "acting as a landlord"). Even if a landlord's condition on a lease can be insulated from challenge by the passage of time, it does not follow that the same is true of a waiver of constitutional rights imposed outside that limited context.

The City's position is not just contrary to precedent, but also would lead to absurd results. If the argument were accepted, any waiver of constitutional rights—no matter how fundamental the right at stake—would become permanently ensconced so long as three years had passed. To use a deliberately extreme hypothetical: Under the City's proposed rule of law, the police could force a person at gunpoint to sign an agreement consenting to racial discrimination, and the validity of that waiver could never again be challenged after three years had passed even though it would remain binding and enforceable. That is not the law. *See*, *e.g.*, *Barrows v. Jackson*, 346 U.S. 249 (1953) (considering constitutionality of racially-restrictive housing covenants without asking how long they had been in place*); Shelly v. Kraemer,* 334 U.S. 1 (1948) (same).

Lastly, the City's reliance on state-law authority concerning the statute of limitations to bring an action for contract rescission misses the point. While Section 1983 borrows its limitations period from state law, the *accrual* of a Section 1983 claim is a question of federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). But even if state law were relevant, it would support the conclusion that an illegal agreement cannot be insulated from challenge by the

23

passage of time. In *Riverside Syndicate, Inc. v. Munroe*, 882 N.E.2d 875, 877-78 (N.Y. 2008), the New York Court of Appeals rejected the argument that a settlement between a landlord and tenants could not be challenged after eight years. The court explained that "[t]his argument misconceives the nature of a statute of limitations; it does not make an agreement that was void at its inception valid by the mere passage of time." *Id.* at 878; *see also Bloomfield v. Bloomfield*, 764 N.E.2d 950, 952 (N.Y. 2001). The City likewise misconceives the nature of a statute of limitations when it argues that an ongoing violation of the Constitution can be insulated from legal challenge simply because it has existed more than three years.

**IV.   Jameelah Has Not Waived Her Claims, And In Any Event This Court Should Not Reach The Issue Of Waiver On A Motion To Dismiss.**

The City contends that "Plaintiff El-Shabazz's claims in this actions are precluded by" a purported "general release" that the City appended to its motion. MTD at 11. According to the City, Jameelah executed this release on February 3, 2012, months after she entered into the challenged settlement agreement, and thereby gave up the right to challenge the prior waiver of her constitutional rights. *Id.* at 12-13. This argument cannot be resolved on a motion to dismiss, however, as critical facts about this purported release remain to be learned.

First, the basic authenticity of this document has not been tested through discovery. The City claims the document is subject to judicial notice because it was "incorporated by reference into the Complaint," MTD at 11 n.4, but the Complaint only refers in the abstract to Jameelah having settled a wrongful-arrest case, Compl. ¶ 82. The City claims the release was executed as part of that settlement, but that contention cannot be taken on faith on a motion to dismiss. *See*, *e.g.*, *Goldman v. Belden*, 754 F.2d 1059, 1066 (2d Cir. 1985) ("improper" to consider extraneous documents on motion to dismiss); *Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 499 (S.D.N.Y. 2003) (arguments based on purported release inappropriate on a motion to dismiss).

Second, the critical question of *when* the release was signed remains subject to "reasonable dispute," Fed. R. Evid. 201(b), and therefore not properly subject to judicial notice. *See Calcutti*, 273 F. Supp. 2d at 498-99 (even if existence of release is a proper subject for judicial notice, "contents" are not). The purported copy of the release bears a date in February 2012, but other documents submitted with the City's motion papers contradict that timeline. *See* Exhibit B to Mbaye Decl. (Doc. 47-2). In particular, in a September 28, 2011 affidavit that Jameelah submitted in the eviction case, Jameelah stated that she settled her wrongful arrest case "[i]n August 2011" and "signed a release in return for a settlement of $12,500" at that time. *Id.* at 13 ¶ 33. This September 2011 declaration contradicts the City's claim that Jameelah did not settle her wrongful arrest case until later, in February 2012, as well as the City's claim that the release post-dates Jameelah's waiver of her constitutional rights.

Third, Plaintiffs have not yet had an opportunity to conduct discovery into the circumstances under which the purported release was obtained, and thus have not yet been able to determine whether it is binding and enforceable. *See*, *e.g.*, *Cain v. Darby Borough*, 7 F.3d 377, 383 (3d Cir. 1993) (finding, at summary judgment, that release was invalid because it was obtained under blanket government policy of requiring releases of civil rights claims). As the above discussion of timing may suggest, Plaintiffs have significant questions about the origin of this purported release. Plaintiffs will require discovery to probe the question of how the release was obtained, whether Jameelah truly signed it, and whether it was a product of coercion or otherwise invalid. Those factual questions cannot be resolved on a motion to dismiss.[15]

---

[15] Cases cited by the City are inapposite because the plaintiffs did not raise any such factual dispute, and instead simply contested the legal effect of the releases. *See Fernandez v. City of New York*, 502 F. App'x 48, 49 (2d Cir. 2012); *Dinkins v. Brust*, No. 16-cv-1368, 2016 WL 7839338, at *1 (E.D.N.Y. Sept. 21, 2016); *Gittens v. City of New York*, No. 10-cv-8502, 2011 WL 10618708, at *1 (S.D.N.Y. May 11, 2016).

## V.    Defendants' Speculation About State-Law Remedies Is Not A Reason To Ignore A Violation Of The Constitution.

The City also argues that this Court should not exercise jurisdiction over the case because Plaintiffs might have "viable state-law claims" to invalidate their settlement agreements. MTD at 25. However, the City cites no legal authority for its argument that state court is therefore "the more appropriate forum." *Id*. at 24. To the contrary, outside the prison context, Section 1983 plaintiffs have no obligation to exhaust state remedies. *Wilbur v. Harris*, 53 F.3d 542, 544 (2d Cir. 1995); *see also Moore v. Cty. of Suffolk*, 851 F. Supp. 2d 447, 457 (S.D.N.Y. 2012) (abstention improper where "not logically necessary to decide the state law issues first"); *Peters v. City of Wilkes-Barre*, No. 15-cv-152, 2016 WL 320748, at *6 (M.D. Pa. Jan. 27, 2016) (declining to abstain in favor of state court procedure offering "post hoc, laggard review of a deprivation without due process"). In any event, even if *some* members of the proposed plaintiff classes have cognizable state-law grounds to challenge their agreements, the broader class-wide claims turn on an alleged class-wide violation of federal law. Federal court is the "appropriate" forum to decide those federal claims.[16]

## VI.    None Of The Defendants Should Be Dismissed.

Lastly, the City argues that officers and agencies included as defendants should be dismissed—despite their role in the challenged practices and policies—because only the City of New York is a proper defendant in this case. MTD at 25-26. State law about whether an agency has "capacity to be sued" should not trump Section 1983's federal right of action, however, and responsible officials should not be dismissed merely because the municipality is also responsible. *See*, *e.g.*, *Krimstock v. Kelly*, 306 F.3d 40, 43 n.1 (2d Cir. 2002) (Sotomayor, J.) ("We refer to

---

[16] *See, e.g.*, *Sourovelis*, 103 F. Supp. 3d at 707 (exercising jurisdiction over federal constitutional challenge to state-court settlements); *Machal, Inc. v. Jena Band of Choctaw Indians*, 387 F. Supp. 2d 659, 661 (W.D. La. 2005) (exercising jurisdiction over request "that the court declare settlement agreements executed in connection with [a] state court action void").

defendants Commissioner of the [NYPD], the Property Clerk of the [NYPD], and the City of New York, collectively, as the 'City.'").[17] In any event, this argument is a distraction, as even if the City were correct the City of New York would remain a defendant and the City's officers and agencies would be subject to the same obligation to (for instance) provide discovery.

## CONCLUSION

The City's Motion to Dismiss should be denied.

Dated: May 1, 2017                              Respectfully submitted,

                                               /s/ Robert Everett Johnson

Ana-Claudia Roderick (ACR 9367)          Darpana M. Sheth (DS 1976)
Ian Goldrich (IG 5653)                   Robert Everett Johnson*
KILPATRICK TOWNSEND &                    Milad Emam*
STOCKTON LLP                             INSTITUTE FOR JUSTICE
1114 Avenue of the Americas              901 North Glebe Road, Suite 900
New York, NY 10036-7703                  Arlington, VA 22203
Tel: (212) 775-8700                      Tel: (703) 682-9320
Fax: (212) 775-8800                      Fax: (703) 682-9321
Email:                                   Email: dsheth@ij.org
aroderick@kilpatricktownsend.com                 rjohnson@ij.org
igoldrich@kilpatricktownsend.com                 memam@ij.org

                                          * Admitted *Pro Hac Vice*

              *Attorneys for Plaintiffs Sung Cho, Nagle Washrite LLC, David Diaz,*
                   *Jameelah El-Shabazz, and the Proposed Plaintiff Classes*

---

[17] *See also Case v. City of New York*, No. 14-cv-9148, 2017 WL 571530 (S.D.N.Y. Feb. 10, 2017) (naming NYPD and individual police officers as defendants alongside City of New York); *Casale v. Kelly*, 257 F.R.D. 396 (S.D.N.Y. 2009) (naming NYPD, police commissioner, and other personnel); *Feerick v. Sudolnik*, 816 F. Supp. 879 (S.D.N.Y. 1993), *aff'd*, 2 F.3d 403 (2d Cir. 1993) (naming NYPD and police commissioner).

**CERTIFICATE OF SERVICE**

I, Robert Everett Johnson, hereby certify that, on this 1st day of May, 2017, I caused a true and correct copy of the foregoing Response to Defendants' Motion to Dismiss to be electronically filed using the court's CM/ECF system, which will automatically send email notification to all counsel of record.

I further certify that, on this 1st day of May, 2017, I caused a courtesy copy of the foregoing Response to Defendants' Motion to Dismiss to be delivered to the Honorable Andrew L. Carter, Jr. at the below address via overnight mail carrier.

<u>**Via Overnight Mail**</u>
The Honorable Andrew L. Carter, Jr.
United States District Judge
United States District Court
Southern District of New York
40 Foley Square, Room 435
New York, NY 10007


  /s/ Robert Everett Johnson