**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x

Cho et al,                                            :
                                                     :
                                  Plaintiffs,        :          1:16-cv-07961
                                                     :
          -against-                                  :          **OPINION AND ORDER**
                                                     :
City of New York et al,                              :
                                  Defendants.        :
                                                     :
-----------------------------------------------------------x

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiffs Jameelah El-Shabazz, Sung Cho, and David Diaz bring this purported class

action pursuant to 42 U.S.C. § 1983, alleging that the settlement agreements that they signed

between two and five years ago to resolve the City of New York's nuisance abatement actions

against them are unconstitutional and unenforceable.   Plaintiffs allege that these settlement

agreements, which were so ordered by judges in New York state courts, contained waivers of

their constitutional rights.   Plaintiffs allege that two of them agreed to such waivers because of

the threat of eviction from their residences and the remaining one because of the threat of closing

his business.   Defendants have moved to dismiss the complaint on a variety of procedural and

pleading infirmities pursuant to Fed. R. Civ. P. 12(b)(6).   The Court raised the issue of subject

matter jurisdiction, specifically the *Rooker-Feldman* doctrine.   Because the Court finds that the

*Rooker-Feldman* doctrine applies, as detailed further below, the matter is dismissed without

prejudice.[1]

---

[1] *See Fraccola v. Grow*, 670 Fed. App'x 34, 35-36 (2d Cir. 2016) (vacating district court's dismissal with prejudice based on the *Rooker-Feldman* doctrine and remanding with instructions to dismiss without prejudice because the doctrine precludes district court review as a matter of subject matter jurisdiction).

# BACKGROUND

Plaintiffs bring this suit against the City of New York, Mayor Bill de Blasio, the New York City Police Department ("NYPD"), Police Commissioner James P. O'Neill, New York City Law Department, and Corporation Counsel of the City of New York Zachary W. Carter. The plaintiffs here are all former defendants in nuisance abatement proceedings brought by the City of New York (the "City"). The following facts are drawn from Plaintiffs' Complaint, accepted as true, as well as matters of which the Court may take judicial notice.

New York City Nuisance Abatement Law

In 1977, the New York City Council enacted the Nuisance Abatement Law (N.Y.C. Admin. Code. §§ 7-701 *et seq.*).[2] Characterized in the Complaint as a "no fault eviction ordinance," Compl. ¶¶ 24-35, the ordinance allows the City to close a residence or business for a period up to one year when it can show—under a civil standard—that an enumerated criminal offense occurred on the premises. N.Y.C. Admin. Code §§ 7-701 *et seq.* Enumerated offenses include, among other things, drug crimes, stolen property offenses, prostitution, obscenity, and liquor law violations. *Id.* § 7-703. The owner or leaseholder of the property does not need to be responsible for the offense. Compl. ¶ 25. At the time of the events in question, the ordinance allowed the City to initiate an action by filing an *ex parte* motion for a "temporary closing order" sealing the location where the alleged crime occurred, without any prior notice or opportunity to be heard. N.Y.C. Admin. Code § 7-709; Compl. ¶ 30. After the premises are closed down, an individual would then have three days to prepare for a hearing at which the

---

[2] Since the time of the events alleged in the Complaint, the New York City Counsel has recently passed several amendments to the Nuisance Abatement Law.

court would decide whether the premises should remain closed for the duration of the litigation. N.Y.C. Admin. Code § 7-710. If the City prevails on the merits of the nuisance abatement action, the City can obtain an order closing the premises for up to a year, as well as civil fines of $1,000 for each day the nuisance is in existence. N.Y.C. Admin. Code §§ 7-714(c), 7-716(a).

These abatement actions rarely proceed all the way to a final decision by a judge, and instead, are almost always resolved by settlement. Compl. ¶ 35. The Complaint alleges that the ordinance led to a policy and practice of settling these abatement actions on the condition that residents and business owners agree to waive constitutional rights. *Id.* ¶¶ 35-37. In these settlements, individuals consent to warrantless searches of their homes or exclusion of certain individuals from their residences, or businesses consent to warrantless searches, the installation of and provision of access to security cameras, and the imposition of fines without any judicial intervention. *Id.* ¶ 36.

Subsequent to this action, the ordinance has been amended. The law now provides a defense based on innocence, *see* N.Y.C. Admin. Code §§ 7-725, 7-726, and limits the use of *ex parte* closing orders to alleged prostitution offenses and to dangerous or uninhabitable buildings. *Id.* § 7-709(a).

Individual Plaintiffs

A. Sung Cho

Sung Cho is an owner of a laundromat business, formally organized as Nagle Washrite LLC. Compl. ¶ 12. Nagle Washrite LLC, a limited liability company in which Cho is the sole member, is also a plaintiff. *Id.* ¶ 12. In December 2014, the City brought a nuisance abatement action against the laundromat based on two stolen-property offenses that allegedly occurred at

3

the business. *Id.* ¶¶ 46-47. The City sought closure for a period of one year and civil penalties. *Id.* ¶ 46. There was no closure of the laundromat,[3] but Cho just had one week before having to appear at a hearing to show cause why his business should not be ordered closed for the duration of the litigation. *Id.* ¶ 47. Because of the risk that his store would be closed, Cho signed a settlement agreement or Stipulation of Settlement to end the action. *Id.* ¶ 49; Mbaye Decl. Ex. H. In that agreement, he consented to unannounced warrantless inspections of the premises, the installation and maintenance of surveillance system for access by the NYPD, and to the waiver of his due process right to a hearing in the event he or his "customers, employees, and/or representatives" are accused of future violations by the NYPD. Compl. ¶ 52-53; Mbaye Decl. Ex. H. Cho also agreed that the Stipulation of Settlement would be part of any sale of the business, as to bind any future owner. Compl. ¶ 55.

B. David Diaz

On September 4, 2013, the City brought a nuisance abatement action against David Diaz. *Id.* ¶ 65. The City also obtained an *ex parte* order closing the apartment, which was issued on the basis of an affidavit of an NYPD officer describing the May 9, 2013 raid of Diaz's apartment, which turned up a small amount of contraband, and an unnamed confidential informant purchasing drugs from an unnamed individual. *Id.* ¶¶ 61-64, 67. Although the City was legally entitled to close Diaz's apartment, Diaz spoke with an NYPD attorney, who informed him that the City would allow the family to stay temporarily to avoid throwing Diaz's infant daughter onto the street. On September 6, Diaz appeared at the scheduled preliminary injunction hearing for the case. *Id.* ¶¶ 69-70. Unaccompanied by an attorney, Diaz spoke with

---

[3] Oral Arg. Tr. 7:18-25, Aug. 1, 2017.

an attorney representing the City who advised him that it would be risky to fight the action given the consequences for him and his infant daughter. *Id.* ¶ 74. Diaz signed a Stipulation of Settlement under which he agreed to exclude several family members from the apartment. *Id.* ¶¶ 74, 98; Mbaye Decl. Ex. F.

C. Jameelah El-Shabazz

On September 27, 2011, the City filed a nuisance abatement action against Jameelah El-Shabazz's apartment.[4] Compl. ¶ 83. The City obtained an *ex parte* order closing the apartment based on an affidavit claiming that an unnamed confidential informant purchased drugs from an unnamed individual at the apartment as well as a May 2011 raid during which the NYPD found forty-five paper cups filled with a white powdery substance. *Id.* ¶ 84. El-Shabazz was able to obtain the assistance of a legal aid attorney, and the attorney signed a Stipulation of Settlement on El-Shabazz's behalf to lift the closing order. Compl. ¶¶ 87, 90; Mbaye Decl. Ex. C. As a condition of settlement, the City required that El-Shabazz agree to permanently exclude her son Akin from the apartment. *Id.* ¶¶ 89, 101; Mbaye Decl. Ex. C.

The Complaint alleges that all of the Plaintiffs are subject to settlement agreements under which they have agreed to perpetual waivers of their constitutional rights and as such the agreements constitute an ongoing injury to Plaintiffs. *Id.* ¶¶ 94-102. Justices of the New York Supreme Court so ordered all of these Stipulations of Settlement.[5] *See* Mbaye Decl. Ex. C, F, H. Plaintiffs seek a declaration that these agreements are "unconstitutional, invalid, and

---

[4] Jameelah and her son previously sued the City for wrongful arrest and imprisonment and settled those cases in August 2011. Compl. ¶ 82.

[5] The Court takes judicial notice of these documents. *Waters v. Douglas*, No. 12 Civ.1910, 2012 WL 5834919, at *2 (S.D.N.Y. Nov. 14, 2012) (noting that "[p]ublicly filed stipulations of settlement are subject to judicial notice").

unenforceable" and to enjoin the City of New York and NYPD from enforcing these agreements. Compl. Wherefore Clauses F and G.

Procedural History

Plaintiffs filed their Complaint on October 12, 2016. Defendants moved to dismiss on April 3, 2017. The Court heard oral argument on August 1, 2017, where the Court *sua sponte* raised the issue of subject matter jursidiction. Soon thereafter, the Court ordered supplemental briefing on the issue of subject matter jurisdiction, specifically whether the action is barred by the *Rooker–Feldman* doctrine. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983).

## STANDARD OF REVIEW

Neither the Plaintiffs nor the Defendants originally raised the issue of whether the *Rooker–Feldman* doctrine applies to this case; the Defendants originally moved to dismiss on other grounds. However, a challenge under the *Rooker–Feldman* doctrine is for lack of subject matter jurisdiction and may be raised *sua sponte* by the Court. *Moccio v. New York State Office of Court Admin.*, 95 F.3d 195, 198 (2d Cir. 1996) (internal citations omitted) *abrogated on other grounds by, Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005). In an inquiry into subject matter jurisdiction, the Court accepts as true all allegations in the plaintiffs' complaint. *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008). The Court may also refer to evidence outside the pleadings, including matters of which judicial notice may be taken. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *see also Wolffing v. McLaughlin*, No. 1:12–cv–000189, 2013 WL 1702638, at *1 (D. Vt. Apr. 19, 2013) (considering orders from underlying state and bankruptcy proceedings in a motion to dismiss for

lack of subject matter jurisdiction).  Dismissal for lack of subject matter jurisdiction is proper

when the district court "lacks the statutory or constitutional power to adjudicate" a case.  *Shabaj*

*v. Holder*, 718 F.3d 48, 50 (2d Cir. 2013).  Plaintiffs asserting subject matter jurisdiction have

the burden of proving by a preponderance of the evidence that it exists.  *Makarova*, 201 F.3d at

113.

## DISCUSSION

The district courts of the United States, as the Supreme Court has stated many times, are

"courts of limited jurisdiction."  *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546,

552 (2005).  From this principle comes the *Rooker-Feldman* doctrine: the doctrine bars all

federal courts, except the Supreme Court, from hearing "cases brought by state-court losers

complaining of injuries caused by state-court judgments rendered before the district court

proceedings commenced and inviting district court review and rejection of those judgments."

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  The Second Circuit

has articulated a four-part test for application of the doctrine: (1) the federal plaintiff must have

lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment;

(3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-

court judgment must have been rendered before the district court proceedings were commenced.

*Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005).  "The first and fourth

of these requirements may be loosely termed procedural; the second and third may be termed

substantive."  *Id.*

The procedural requirements are met in this case.  Plaintiffs' so-ordered settlement

stipulations qualify them as "state-court losers" in satisfaction of the first procedural requirement

7

of the *Rooker-Feldman* doctrine. Courts have treated settlement agreements as final judgments for the purpose of the *Rooker-Feldman* doctrine. *See, e.g., Allianz Ins. Co. v. Cavagnuolo*, No. 03 Civ. 1636, 2004 WL 1048243, at *6 (S.D.N.Y. May 7, 2004) ("[A] settlement agreement may constitute a final judgment for the purposes of the *Rooker–Feldman* doctrine."); *Green v. City of New York*, 438 F. Supp. 2d 111, 119 (E.D.N.Y. 2006) ("[R]ather than putting the court in the position of evaluating subjectively whether a settlement should be considered a loss, it seems sufficient for plaintiffs to allege that the court-approved settlements somehow violated their rights."); *Johnson v. Orr*, 551 F.3d 564, 568 (7th Cir. 2008) ("A settlement approved by a state court is a judgment for purposes of *Rooker-Feldman*."). Plaintiffs Cho, Diaz, and El-Shabazz were all defendants in the original nuisance abatement lawsuits brought against them, which were resolved by settlements so-ordered by the state courts. Moreover, each of the Plaintiffs' respective settlements was approved by the state court before the commencement of this action on October 12, 2016, thereby meeting the other procedural requirement of *Rooker-Feldman*.

The case turns on the substantive requirements of *Rooker-Feldman*, the second and third elements. The second element involves "an inquiry into the source of the plaintiff's injury." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010). The Second Circuit has instructed on this element that "a federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Hoblock*, 422 F.3d at 77. Essentially, this element turns on "the *causal relationship* between the state-court judgment and the injury of which the party complains in federal court." *McKithen v. Brown*, 481 F.3d 89, 97-98 (2d Cir. 2007). Thus, the timing of the

8

injury is a useful guide: "a party is not complaining of an injury 'caused by' a state-court judgment when the exact injury of which the party complains in federal court existed *prior* in time to the state-court proceedings, and so could not have been 'caused by' those proceedings." *Id.* at 98.

Here, the source of the injury is the stipulations of settlement. The Complaint unequivocally identifies it as so: "[all] of these Plaintiffs are subject to settlement agreements under which they have agreed to perpetual waivers of their constitutional rights [and] *[t]hese agreements constitute ongoing injury* to Plaintiffs." Compl. ¶ 94 (emphasis added). Allegations that a state court so-ordered settlement or judgment has harmed a plaintiff is sufficient to satisfy the substantive requirements of *Rooker-Feldman*. *See Fraccola v. Grow*, 670 Fed. App'x 34, 35 (2d Cir. 2016) ("[plaintiff] alleges injuries directly caused by the so-ordered stipulation"); *Thompson v. Donovan*, No. 13-CV-2988, 2014 WL 5149037, at *12 (S.D.N.Y. Oct. 14, 2014).

Plaintiffs contend that the complained-of injury was caused by the City's conduct in negotiating the settlement, and not the settlements themselves. Specifically, Plaintiffs' ratification argument is that injury was caused by the City's demand that Plaintiffs waive their constitutional rights as a condition of settlement, which the state courts ratified when they so ordered the settlements. The contention misses the mark as the City's conduct cannot be separated from the settlement itself. Here, without the settlement, the City's conduct, or alleged unconstitutional coercion, would have produced no injury. Thus, there was no preexisting injury for the so-ordering courts to ratify.

As such, the cases that Plaintiffs rely upon do not support their argument because they

involve situations where the claims and alleged injuries pre-exist, and are independent of, the

state-court judgments. *See Sykes v. Mel S. Harris & Assocs, LLC*, 780 F.3d 70, 79 (2d Cir.

2015) (*Rooker-Feldman* does not apply when "plaintiffs assert claims independent of the state-

court judgments and do not seek to overturn them"). In *Green v. City of New York*, 438 F. Supp.

2d 111, 121 (E.D.N.Y. 2006), disabled children and their parents sued the City of New York

claiming that the City had improperly deducted money from settlements obtained in state-court

personal injury actions in order to recoup costs incurred providing services that federal law

mandated to be provided free of charge. *Id.* at 117. The Court found that the injury to the

plaintiffs was caused by the miscalculation of lien amounts that occurred prior to and

independent of the court-approved settlement. *Id.* at 121. The source of the injury is consistent

with the fact that the plaintiffs sought not the rescission of the settlement agreement, as Plaintiffs

do here, but the return of part of the monies specified in and ordered pursuant to the settlement

agreements. Likewise, in *Capela v. J.G. Wentworth, LLC*, No. 09-cv-882, 2009 WL 3128003

(E.D.N.Y. Sept. 24, 2009), plaintiff challenged defendant's conduct in negotiating an agreement

altering an existing settlement as violative of the Truth in Lending Act for failure to disclose, and

the agreement was approved by a court. *Id.* at *6. Applying *Hoblock*, the court found that the

plaintiff complained of injuries occurring prior to the state-court judgment that the court simply

left unpunished, and thus *Rooker-Feldman* did not bar the suit. *Id.*

Here, the gravamen of the Plaintiff's complaint is that these settlements subject them to

allegedly unconstitutional restrictions, which they ask this federal court to review and declare

invalid under the unconstitutional conditions doctrine. These settlements were signed and so-

ordered so that the nuisance abatement actions would be discontinued. It follows, then, that the

source of their injury is the settlement agreements, so-ordered by the Justices of the New York State Supreme Court. Accordingly, this element of *Rooker-Feldman* is met.

The third element turns on whether the plaintiff is seeking federal court review and rejection of the state-court judgment. *Hoblock*, 422 F.3d at 85. Plaintiffs contend that this proceeding is not the functional equivalent of a state court appeal—which is what *Rooker-Feldman* bars—because Plaintiff would have to return to the trial court to challenge the settlement in the state trial courts rather than appeal from the judgment entering the settlement. This narrow definition of "de facto appellate review" is not supported by *Rooker*, the co-namesake of the doctrine. In *Rooker*, the Supreme Court stated that "a proceeding to review or modify" a judgment is "an exercise of appellate jurisdiction." 263 U.S. at 416. In the Complaint, Plaintiffs request that this Court review their Stipulations of Settlement and declare them unconstitutional, invalid, and unenforceable. *See* Complaint at ¶¶ 115, 153, 193, 201, 209, 219, and 226; *see also id.* at Wherefore Clauses D, E, F, and G. This is the equivalent to what the plaintiff in *Rooker* sought: to have the state-court decisions undone or declared null and void by federal courts. *See Rooker,* 263 U.S. at 414. More important, the Supreme Court made clear that *Rooker-Feldman* does not turn on whether the proceeding is a true analogue of an appeal but whether the proceeding invites the court to review and reject those judgments. *Exxon Mobil Corp.*, 544 U.S. at 284. Plaintiffs here undoubtedly seek review and rejection of the Stipulations of Settlement, and therefore this element of *Rooker-Feldman* is met.

Because all the procedural and substantive elements of the *Rooker-Feldman* doctrine are present in this case, the Court lacks subject matter jurisdiction over the matter.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted, and the Complaint is dismissed without prejudice.

**SO ORDERED.**

**Dated:** January 11, 2017
New York, New York

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**